**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ROBERT FARINA,<br><br>            Plaintiff,<br><br>    v.<br><br>MYOKARDIA, INC., SUNIL AGARWAL, MARY CRANSTON, TASSOS GIANAKAKOS, DAVID MEEKER, MARK PERRY, KIM POPOVITS, and WENDY YARNO,<br><br>            Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Robert Farina ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MyoKardia, Inc., ("MyoKardia" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on MyoKardia's website concerning the Company's public statements; and (d) review of other publicly available information concerning MyoKardia and the Defendants.

## NATURE OF THE ACTION

1.      Plaintiff brings this action against the Company and members of the Company's Board of Directors (the "Board" or the "Individual Defendants") for violations of Sections 14(d)(4), 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15

U.S.C. §§ 78n(d)(4), 78n(e), 78t(a), and SEC Rule 14d-9, 17 C.F.R. §240.14d-9(d) ("Rule 14d-9"), in connection with the proposed acquisition of the Company by Bristol-Myers Squibb Company ("Parent") and Gotham Merger Sub Inc. ("Merger Sub, and together with Parent, "Bristol-Myers"). (the "Proposed Transaction").

2.      On October 3, 2020, MyoKardia the Company entered into definitive agreement with Bristol-Myers (the "Merger Agreement"), pursuant to which Merger Sub commenced a tender offer (the "Tender Offer") to purchase all of MyoKardia's outstanding common stock for $225.00 per share in cash. The Tender Offer is scheduled to expire on November 16, 2020.

3.      On October 19, 2020, the Company filed an incomplete and materially misleading Recommendation Statement with the SEC (the "Recommendation Statement") in connection with the Proposed Transaction.  The Recommendation Statement omits material information concerning the Proposed Transaction.

4.      Accordingly, the failure to adequately disclose such material information constitutes a violation of Sections 14(d), 14(e) and 20(a) of the Exchange Act as MyoKardia stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

5.      As set forth more fully herein, Plaintiff seeks to enjoin Defendants from proceeding with the Proposed Transaction.

**JURISDICTION AND VENUE**

6.      This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 as Plaintiff alleges violations of Sections 14(d)(4), 14(e) and 20(a) of the Exchange Act

7.     This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.   In addition, the Company's common stock trades on the NASDAQ Global Select Market ("NASDAQ"), which is headquartered in this District.

## THE PARTIES

9.     Plaintiff has been the owner of the common stock of MyoKardia since prior to the transaction herein complained of and continuously to date.

10.     Defendant MyoKardia is a Delaware corporation with its principal executive offices located at 1000 Sierra Point Parkway, Brisbane, California 94005.  The Company's stock trades on the NASDAQ under the ticker "MYOK."

11.     Defendant Sunil Agarwal ("Agarwal") is and has been a director of the Company at all times during the relevant time period.

12.     Defendant Mary Cranston ("Cranston") is and has been a director of the Company at all times during the relevant time period.

13.     Defendant Tassos Gianakakos ("Gianakakos") is and has been the President, Chief Executive Officer, and a director of the Company at all times during the relevant time period.

14.     Defendant David Meeker ("Meeker") is and has been a director of the Company at all times during the relevant time period.

15.     Defendant Mark Perry ("Perry") is and has been a director of the Company at all times during the relevant time period.

16.     Defendant Kim Popovits ("Popovits") is and has been a director of the Company at all times during the relevant time period.

17.     Defendant Wendy Yarno ("Yarno") is and has been a director of the Company at all times during the relevant time period.

18.     Defendants Agarwal, Cranston, Gianakakos, Meeker, Perry, Popovits, and Yarno are collectively referred to herein as the "Individual Defendants."

19.     Defendant MyoKardia, along with the Individual Defendants, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

20.     MyoKardia is a clinical-stage biopharmaceutical company discovering and developing targeted therapies for the treatment of serious cardiovascular diseases. The Company is pioneering a precision medicine approach to its discovery and development efforts by 1) understanding the biomechanical underpinnings of disease; 2) targeting the proteins that modulate a given condition; 3) identifying patient populations with shared disease characteristics; and 4) applying learnings from research and clinical studies to inform and guide pipeline growth and product advancement. MyoKardia's initial focus is on small molecule therapeutics aimed at the proteins of the heart that modulate cardiac muscle contraction to address diseases driven by excessive contraction, impaired relaxation, or insufficient contraction.

Among its discoveries are three clinical-stage therapeutics: mavacamten (formerly MYK-461); danicamtiv (formerly MYK-491) and MYK-224.

## The Company Announces the Proposed Transaction

21.     On October 5, 2020, MyoKardia issued a press release announcing that the Company had entered an agreement in connection with the Proposed Transaction.  The press release stated, in pertinent part:

> NEW YORK & BRISBANE, Calif.--(BUSINESS WIRE)--Bristol Myers Squibb (NYSE: BMY) and MyoKardia, Inc. (Nasdaq: MYOK) today announced a definitive merger agreement under which Bristol Myers Squibb will acquire MyoKardia for $13.1 billion, or $225.00 per share in cash. The transaction was unanimously approved by both the Bristol Myers Squibb and MyoKardia Boards of Directors and is anticipated to close during the fourth quarter of 2020.
>
> MyoKardia is a clinical-stage biopharmaceutical company discovering and developing targeted therapies for the treatment of serious cardiovascular diseases. Through the transaction, Bristol Myers Squibb gains mavacamten, a potential first-in-class cardiovascular medicine for the treatment of obstructive hypertrophic cardiomyopathy ("HCM"), a chronic heart disease with high morbidity and patient impact. A New Drug Application ("NDA") for mavacamten for the treatment of symptomatic obstructive HCM – based on data from the EXPLORER-HCM study – is expected to be submitted to the U.S. Food and Drug Administration ("FDA") in the first quarter of 2021. Bristol Myers Squibb expects to explore the full potential of mavacamten in additional indications, including non-obstructive HCM, as well as develop MyoKardia's promising pipeline of novel compounds, including two clinical-stage therapeutics: danicamtiv (formerly MYK-491) and MYK-224.
>
> "The acquisition of MyoKardia further strengthens our portfolio, pipeline and scientific capabilities, and is expected to add a meaningful medium- and long-term growth driver," said Giovanni Caforio, M.D., Board Chair and Chief Executive Officer of Bristol Myers Squibb. "We are further strengthening our outstanding cardiovascular franchise through the addition of mavacamten, a promising medicine with the potential to address a significant unmet medical need in patients with cardiovascular disease. Our companies share a commitment to innovation and bold science, and our respective strengths will help us realize the value inherent in this portfolio. We have long admired MyoKardia and what they have done to revolutionize cardiovascular treatments through a precision medicine approach. We look forward to welcoming their talented team to our company."

"MyoKardia was formed eight years ago with the aim of changing the world for people with serious cardiovascular diseases through bold and innovative science. Since then, MyoKardia's dedicated employees have established an unparalleled pipeline of targeted therapeutics designed to change the course of disease and return the heart to normal function," said Tassos Gianakakos, Chief Executive Officer of MyoKardia. "Bristol Myers Squibb shares our vision for transforming the treatment of cardiovascular disease. They value our team and the potential of our platform and, most importantly, share our unwavering commitment to placing patients at the center of everything we do. Together, our complementary strengths and expanded resources and reach will further accelerate the pace at which we can discover, develop and commercialize our novel medicines for the benefit of people suffering from cardiovascular disease around the world."

*       *       *

**Transaction Terms and Financing**

Under the terms of the merger agreement, a subsidiary of Bristol Myers Squibb will promptly commence a tender offer to acquire all of the outstanding shares of MyoKardia's common stock for $225.00 per share in cash. MyoKardia's Board of Directors unanimously recommends that MyoKardia shareholders tender their shares in the tender offer.

The transaction is subject to customary closing conditions, including the tender of a majority of the outstanding shares of MyoKardia's common stock and the expiration or termination of the waiting period under the Hart-Scott-Rodino Antitrust Improvements Act of 1976. Following the successful closing of the tender offer, Bristol Myers Squibb will acquire all remaining shares of MyoKardia that are not tendered into the tender offer through a second-step merger at the same price of $225.00 per share.

Bristol Myers Squibb expects to finance the acquisition with a combination of cash and debt.

**About Hypertrophic Cardiomyopathy**

Hypertrophic cardiomyopathy, or HCM, is a chronic, progressive disease in which excessive contraction of the heart muscle and reduced ability of the left ventricle to fill can lead to the development of debilitating symptoms and cardiac dysfunction. HCM is estimated to affect one in every 500 people.

The most frequent cause of HCM is mutations in the heart muscle proteins of the sarcomere. In approximately two-thirds of HCM patients, the path followed by blood exiting the heart, known as the left ventricular outflow tract (LVOT),

becomes obstructed by the enlarged and diseased muscle, restricting the flow of blood from the heart to the rest of the body (obstructive HCM). In other patients, the thickened heart muscle does not block the LVOT, and their disease is driven by diastolic impairment due to the enlarged and stiffened heart muscle (non-obstructive HCM). In either obstructive or non-obstructive HCM patients, exertion can result in fatigue or shortness of breath, interfering with a patient's ability to participate in activities of daily living. HCM has also been associated with increased risks of atrial fibrillation, stroke, heart failure and sudden cardiac death.

There are currently approximately 160,000 to 200,000 people diagnosed with symptomatic obstructive HCM across the U.S. and EU, with no existing effective treatment options beyond limited symptomatic relief. Patients are typically diagnosed in their 40s or 50s and the treatment is expected to be chronic. It is estimated that only approximately 25 percent of individuals with obstructive HCM and only approximately 10 percent of individuals with non-obstructive HCM have received a diagnosis.

**Conference Call**

At 8:00 a.m. Eastern Time / 5:00 a.m. Pacific Time today, Bristol Myers Squibb will host a conference call and a simultaneous webcast to discuss the transaction. A live webcast of the call can be accessed at Bristol Myers Squibb's Investors page at bms.com/investors. Please connect to the website at least 15 minutes prior to the start of the call to allow adequate time for any software download that may be required. Alternatively, please call (877) 658-9096 (U.S.) or (602) 563-8733 (international) and dial the conference ID 9697843 to access the call.

Telephone replay will be available approximately three hours after the call until 11:30 a.m. ET on October 19, 2020. To access the replay, please call (855) 859-2056 (U.S.) or (404) 537-3406 (international) and dial the conference ID 9697843. The webcast will be archived on bms.com/investors.

**Advisors**

Gordon Dyal & Co., LLC is serving as exclusive financial advisor to Bristol Myers Squibb, and Kirkland & Ellis LLP is serving as legal counsel. Centerview Partners LLC and Guggenheim Securities are acting as joint financial advisors to MyoKardia and Goodwin Procter LLP is serving as legal counsel.

**FALSE AND MISLEADING STATEMENTS
AND/OR MATERIAL OMISSIONS IN THE RECOMMENDATION STATEMENT**

22.     On October 19, 2020, the Company authorized the filing of the Recommendation Statement with the SEC.   The Recommendation Statement recommends that the Company's stockholders tender their shares in favor of the Proposed Transaction.

23.     Defendants were obligated to carefully review the Recommendation Statement prior to its filing with the SEC and dissemination to the Company's unitholders to ensure that it did not contain any material misrepresentations or omissions.   However, the Recommendation Statement misrepresent and/or omit material information that is necessary for the Company's shareholders to make informed decisions concerning whether to tender their shares in favor of the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Managements Projections

24.     The Recommendation Statement contains financial projections prepared by senior members of MyoKardia's management in connection with the Proposed Transaction, but fails to provide material information concerning such.

25.     The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1]   Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

26.     In order to make management's projections included in the Recommendation Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

27.     Specifically, with respect to each set of financial projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including, but not limited to, all line items used to calculate EBIT.

28.     Disclosure of the above line item projections is vital to provide investors with the complete mix of information necessary to make an informed decision when deciding whether to tender their shares in connection with the Proposed Transaction.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Centerview's Opinion

29.     The Recommendation Statement contains the financial analyses and opinion of Centerview Partners LLC ("Centerview") concerning the Proposed Transaction but fails to provide material information concerning information concerning such.

30.     With respect to Centerview's *Selected Public Company Analysis*, the Recommendation Statement fails to disclose the basis for Centerview's selection of a reference range of 2024E EV/Revenue Trading Multiples of 4.0x to 6.0x.

---

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

31.     With respect to Centerview's *Selected Precedent Transaction Analysis*, the Recommendation Statement fails to disclose the basis for Centerview's application of a reference range of 9.5x to 11.5x four-year forward revenue multiples.

32.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the basis for Centerview's assumption that unlevered free cash flows would decline in perpetuity after December 31, 2045 at a rate of free cash flow decline 80% year-over-year; (ii) the terminal values of the Company; (iii) the inputs and assumptions underlying Centerview's selection of the range of discount rates from 9.0% to 11.0%; and (iv) the Company's fully diluted outstanding shares.

33.     With respect to Centerview's *Analyst Price Target Analysis*, the Recommendation Statement fails to disclose: (i) the specific price targets observed in Centerview's analysis; and (ii) the sources thereof.

34.     With respect to Centerview's *Premiums Paid Analysis*, the Recommendation Statement fails to disclose the premiums observed by Centerview in its analysis.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding Guggenheim's Opinion

35.     The Recommendation Statement contains the financial analyses and opinion of Guggenheim Securities LLC ("Guggenheim") concerning the Proposed Transaction but fails to provide material information concerning information concerning such.

36.     With respect to Guggenheim's *Discounted Cash Flow Analysis*, the Recommendation Statement fails to disclose: (i) the Company's terminal values; (ii) the individual inputs and assumptions underlying Guggenheim's selection of the range of discount rates from 8.5% to 10.5%; (iii) the basis for Guggenheim's selection of an illustrative perpetual growth rate of negative 80%; and (iv) the Company's diluted shares outstanding.

37.    With respect to Guggenheim's *Selected Precedent Merger and Acquisition Transactions Analysis*, the Recommendation Statement fails to disclose the basis for Guggenheim's selecting a transaction enterprise value/risk adjusted revenue multiple range of 4.0x-7.3x.

38.    With respect to Guggenheim's *Premia Paid in Selected Merger and Acquisition Transactions Analysis*, the Recommendation Statement fails to disclose the specific transactions observed in the analysis as well as the premiums paid in each of the transactions.

39.    With respect to Guggenheim's *Wall Street Equity Research Analyst Stock Price Targets Analysis*, the Recommendation Statement fails to disclose: (i) the specific price targets observed in the analysis; and (ii) the sources thereof.

40.    When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

41.    Without the above described information, the Company's shareholders are not fully informed with respect to the Proposed Transaction.  Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(d) of the Exchange Act and Rule 14d-9 Promulgated Thereunder)

42.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

43.     Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder makes it a requirement to make full and complete disclosure in connection with tender offers.

44.     As discussed herein, the Recommendation Statement, while soliciting shareholder support for the Proposed Transaction, misrepresent and/or omit material facts concerning the Proposed Transaction.

45.     Defendants prepared, reviewed, filed and disseminated the false and misleading Recommendation Statement to MyoKardia shareholders. In doing so, Defendants knew or recklessly disregarded that the Recommendation Statement failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

46.     The omissions and incomplete and misleading statements in the Recommendation Statement are material in that a reasonable shareholder would consider them important in deciding whether to tender their shares in favor of the Proposed Transaction. In addition, a reasonable investor would view such information as altering the "total mix" of information made available to shareholders.

47.     By virtue of their positions within the Company and/or roles in the process and in the preparation of the Recommendation Statement, Defendants were undoubtedly aware of this information and had previously reviewed it, including participating in the Proposed Transaction negotiation and sales process and reviewing MyoKardia's financial advisor's complete financial analyses purportedly summarized in the Recommendation Statement.

48.    The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

49.    MyoKardia is deemed negligent as a result of the Individual Defendants' negligence in preparing and reviewing the Recommendation Statement.

50.    Defendants knew that Plaintiff and other shareholders would rely upon the Recommendation Statement in determining whether to tender their shares in favor of the Proposed Transaction.

51.    As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(d)(4) of the Exchange Act and Rule 14d-9 promulgated thereunder, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

52.    Plaintiff has no adequate remedy at law.

## COUNT II

**(Against All Defendants for Violation
Of Section 14(e) of the Exchange Act)**

53.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

54.    Defendants violated Section 14(e) of the Exchange Act by issuing the Recommendation Statement in which they made false statements of material fact or failed to state all material facts that would be necessary to make the statements made, in light of the circumstances, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Proposed Transaction.

55.     Defendants knew that Plaintiff and the Company's shareholders would rely upon their statements made in the Recommendation Statement in determining whether to tender shares in favor of the Proposed Transaction.

56.     As a direct and proximate result of Defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff and other shareholders will suffer irreparable injury by being denied the opportunity to make an informed decision as to whether to tender their shares in favor of the Proposed Transaction.

## COUNT III

### (Against the Individual Defendants for
### Violations of Section 20(a) of the Exchange Act)

57.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

58.     The Individual Defendants acted as controlling persons of MyoKardia within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MyoKardia, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

59.     Each of the Individual Defendants were provided with or had unlimited access to copies of the Recommendation Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

60.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same. The Recommendation Statement contain the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

61.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons and the acts described herein, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.

62.     As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

63.     Plaintiff has no adequate remedy at law.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     Directing the Individual Defendants to disseminate an Amendment to the Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C.      Directing Defendants to account to Plaintiff for their damages sustained because of the wrongs complained of herein;

D.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.      Granting such other and further relief as this Court may deem just and proper.

**DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated: October 29, 2020                              Respectfully submitted,

By: /s/ Joshua M. Lifshitz
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
821 Franklin Avenue, Suite 209
Garden City, New York 11530
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*